IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

In re

CITY OF VALLEJO, CA,

      Debtor,
_____

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, LOCAL 2376,

      Appellant,

   v.

CITY OF VALLEJO, CA,

      Appellee.
_____/

No. 2:09-cv-02603-JAM

Bankr. Case No. 08-26813-A-9

ORDER AFFIRMING THE BANKRUPTCY
COURT'S ORDER

    This matter is before the Court on Appellant International

Brotherhood of Electrical Workers' ("IBEW's") appeal from the

Bankruptcy Court's ruling on Appellee City of Vallejo's (the

"City's") motion to reject IBEW's collective bargaining

contract.

I. <u>Facts and Procedural Background</u>

On May 23, 2008, the City filed a petition for relief under Chapter 9 of the Bankruptcy Code. One month after filing, the City unilaterally modified the terms of collective bargaining agreements ("CBAs") with four unions: IBEW, the International Association of Firefighters ("IAFF"), the Vallejo Police Officers Association ("VPOA") and the Confidential, Administrative, Managerial and Professional Employees of Vallejo ("CAMP"). On June 17, 2008, the City filed a Motion for Approval of Rejection of Collective Bargaining Agreements ("Motion") pursuant to Bankruptcy Code Section 365(a). The City sought approval from the Bankruptcy Court to reject the CBAs of these four unions.

Before the Motion was heard, IBEW, IAFF and VPOA challenged the City's eligibility to file for Chapter 9 bankruptcy relief under Code Section 109(c). On September 5, 2008, the Bankruptcy Court issued its Eligibility Findings, holding that the City met the Chapter 9 eligibility requirements, and in particular, that the City was insolvent. The three unions appealed to the Bankruptcy Appellate Panel for the Ninth Circuit ("BAP"), which

affirmed. In re City of Vallejo, 408 B.R. 280 (B.A.P. 9th Cir. 2009).

For efficiency, the Bankruptcy Court deferred hearing the Motion until after eligibility was determined. On December 11, 2008, the unions filed an opposition to the Motion. The City filed a reply on January 23, 2009. Shortly before the February 3, 2009 evidentiary hearing on the Motion, VPOA and CAMP agreed to modifications on their contracts. Subsequently, the City voluntarily dismissed the Motion as to VPOA and CAMP.

On March 13, 2009, the Bankruptcy Court issued a Memorandum Decision ("Memorandum") on the Motion. (Doc. #1). The Memorandum concluded that the federal bankruptcy law, specifically Section 365(a) as interpreted by the Supreme Court's decision in N.L.R.B. v. Bildisco & Bildisco, 465 U.S. 513 (1984), controlled whether public sector labor agreements could be rejected in a Chapter 9 case. The Memorandum stated that Bildisco provided the legal standard for determining whether rejection was warranted. Instead of ruling on whether the evidence satisfied the legal standard, the Bankruptcy Court then ordered the City and the two remaining unions to judicially-supervised mediation.

In August 2009, IAFF agreed to rejection of their CBA, which was approved by the Bankruptcy Court. Because IBEW and the City could not reach an agreement through mediation, the Motion went to decision.

On August 31, 2009, the Bankruptcy Court issued its Findings of Fact and Conclusions of Law on the Motion. The Bankruptcy Court granted the Motion, confirming the legal ruling in the Memorandum and finding that the evidence satisfied the Bildisco standard. IBEW appealed that ruling to this Court.

II. Opinion

A. Standard of Review

The Bankruptcy Court's interpretations of the Bankruptcy Code and conclusions of law are reviewed de novo by this Court. Blausey v. United States Trustee, 552 F.3d 1124, 1132 (9th Cir. 2009)(internal citations omitted).

This Court reviews the Bankruptcy Court's factual findings for clear error. Id. Factual review under this standard requires deference to the Bankruptcy Court. McClure v. Thompson, 323 F.3d 1233, 1240 (9th Cir. 2003). Review under the clearly erroneous standard requires significant deference to the trial court. Ambassador Hotel Co., Ltd. v. Wei-Chuan Inv., 189 F.3d 1017, 1024 (9th Cir. 1999) (internal citations omitted). The factual findings will only be clearly erroneous if the reviewing court has the "definite and firm conviction that a mistake has been committed." Id. (quoting Concrete Pipe & Prods. of Cal., Inc. v. Construction Laborers Pension Trust, 508 U.S. 602, 623 (1993));

see also <u>Latman v. Burdette</u>, 366 F.3d 774, 776 (9th Cir. 2004).

"Clear error is not demonstrated by pointing to conflicting

evidence in the record." <u>Nat'l Wildlife Fed'n v. Nat'l Marine</u>

<u>Fisheries Serv.</u>, 422 F.3d 782, 795 (9th Cir. 2005)(quoting

<u>United States v. Frank</u>, 956 F.2d 872, 875 (9th Cir. 1991)).

Instead, if the trial court's account of the evidence is

plausible in light of the record viewed in its entirety, the

reviewing court may not reverse it even though convinced that,

had it been sitting as the trier of fact, it would have weighed

the evidence differently. <u>Id</u>. (citations omitted).

A court's evidentiary rulings are reviewed for abuse of

discretion. <u>Watec Co., Ltd. v. Liu</u>, 403 F.3d 645, 650 n.3 (9th

Cir. 2005) (citing <u>Janes v. Wal-Mart Stores, Inc.</u>, 279 F.3d 883,

886 (9th Cir. 2002)). "To reverse on the basis of an erroneous

evidentiary ruling, [a court] must conclude not only that the

bankruptcy court abused its discretion, but also that the error

was prejudicial." <u>Santa Barbara Capital Mgmt. v. Neilson (In re</u>

<u>Slatkin)</u>, 525 F.3d 805, 811 (9th Cir. 2008) (citations omitted).

"'A reviewing court should find prejudice only if it concludes

that, more probably than not, the lower court's error tainted

the verdict.'" <u>McEuin v. Crown Equip. Corp.</u>, 328 F.3d 1028, 1032

(9th Cir. 2003) (quoting <u>Tennison v. Circus Circus Enters.,</u>

<u>Inc.</u>, 244 F.3d 684, 688 (9th Cir. 2001)).

B. Issues on Appeal

IBEW raises four issues on appeal: (1) whether Section 365 of the Bankruptcy Code authorized the City to reject its CBA with IBEW; (2) if rejection of a public employment contract is permissible under the Bankruptcy Code, whether the Supreme Court's Bildisco decision provided the standard for the Bankruptcy Court's approval of the City's unilateral rejection and modification of the IBEW CBA under Chapter 9, or whether the Bankruptcy Court should have looked to California state law standards governing contract impairment; (3) if the Bildisco standard is the appropriate standard of review for rejection of a CBA, did the Bankruptcy Court err in finding the City satisfied its burden of proof; and (4) if rejection of the IBEW CBA was authorized, whether the City acted properly in treating the CBA as unilaterally modified before the Bankruptcy Court approved the City's rejection of the contract.[1]

C. Bankruptcy Code Section 365

The Bankruptcy Court held that Section 365 of the Bankruptcy Code authorized the City to reject the IBEW CBA. IBEW

_____

[1] This fourth issue has arguably been waived by IBEW, since its briefs contain no separate or distinct argument with respect to this issue. See FN 21 in the City's Opposition Brief. Accordingly, this Court does not intend to separately address this fourth issue.

argues that Bankruptcy Code Section 365 does not authorize rejection of a CBA, and that state labor law should control.

Chapter 9 of the Bankruptcy Code governs municipalities that declare bankruptcy. Section 901(a) expands Chapter 9 to include other carefully selected sections of chapters 3, 5, and 11 of Title 11. 6 Collier on Bankruptcy, ¶ 901.01 (2010). Not all sections are incorporated into Chapter 9 because some sections would frustrate the unique purpose of municipal debt adjustment proceedings. Id.

Section 365 is incorporated into Chapter 9 in Section 901(a). Section 365 governs the assumption and rejection of executory contracts of the debtor. 6 Collier, supra, ¶ 901.04. Section 365(a) expressly allows the debtor in a Chapter 9 case to assume or reject any executory contract, subject to the court's approval. 11 U.S.C. § 365(a).

In addition to the sections incorporated through Section 901(a), Chapter 9 includes Sections 903 and 904, which were crucial to the constitutionality of Chapter 9. In re County of Orange, 179 B.R. 177, 182 n.10 (Bankr. C.D. Cal. 1995). In essence, Section 903 states that Chapter 9 does not affect the power of a state to control its municipality. Id. In addition, a state must consent to a bankruptcy filing by a municipality under 11 U.S.C. § 109(c)(2). These two sections, taken together, empower states to act as gatekeepers to their municipalities'

access to Chapter 9. In turn, a state's authorization that its municipalities may seek Chapter 9 relief is a declaration of state policy that the benefits of Chapter 9 take precedence over control of its municipalities. See In re County of Orange, 191 B.R. 1005, 1021 (Bankr. C.D. Cal. 1995)("By authorizing the use of Chapter 9 by its municipalities, California must accept Chapter 9 in its totality; it cannot cherry pick what it likes while disregarding the rest.")

California Government Code § 53760 authorizes municipalities to petition for bankruptcy. Cal. Gov't Code § 53760(a)("Except as otherwise provided by statute, a local public entity in this state may file a petition and exercise powers pursuant to applicable federal bankruptcy law.") The previous version of the Government Code did not include the "except as otherwise provided by statute" language. The Law Revision Commission Comments for the 2002 addition state that, "This section is intended to provide the broadest possible state authorization for municipal bankruptcy proceedings, and thus provides the specific state law authorization for municipal bankruptcy filing required under federal law. See 11 U.S.C. § 109(c)(2) (Westlaw 2001). As recognized in the introductory clause of subdivision (a), this broad grant of authority is subject to specific limitations provided by statute. See, e.g., Ins. Code §10089.21 (California Earthquake Authority precluded

from resort to bankruptcy); Sts. & Hy. Code § 9011 (prerequisites to bankruptcy filing under the Improvement Bond Act of 1915). See also Educ. Code § 41325 (control of insolvent school district by Superintendent of Public Instruction); Health and Safety Code § 129173 (health care district trusteeship)." With respect to the conditional language, "Except as otherwise provided by statute," neither Government Code Section 53760 nor any other provision of California law explicitly imposes on California municipalities limitations or restrictions that require compliance with or make applicable state labor laws.

As further discussed below, the legislative history of Chapter 9 and California Government Code §53760 support the City's argument that municipalities are intended to have broad authority to reject contracts and reorganize pursuant to Chapter 9, without regard to state labor laws.

D. <u>Federal Preemption</u>

IBEW argues that the Bankruptcy Court improperly concluded that the City was authorized to reject the IBEW CBA without looking to state law standards for mid-term modification or termination of public employment contracts. IBEW contends that in Chapter 9, state labor law should not be preempted by federal bankruptcy law, i.e. it is state labor law that determines whether a public employee labor agreement may be rejected. This

Court finds that the Bankruptcy Court's conclusion of law on this issue is supported by the record and by proper analysis.

Pursuant to the Supremacy Clause, federal laws are the supreme law of the land, notwithstanding state laws to the contrary. U.S. Const. art. VI, cl. 2. "Accordingly, it is axiomatic that state law that conflicts with federal law is without effect. Federal law may preempt state law under the Supremacy Clause in three ways. First, Congress may state its intent through an express preemption statutory provision. Second, in the absence of explicit statutory language, state law is preempted where it regulates conduct in a field that Congress intended the federal government to occupy exclusively. Such an intent may be inferred from a scheme of federal regulation . . . so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it or where an Act of Congress touch[es] the field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state law on the same subject. Finally, state law that actually conflicts with federal law is preempted . . . In considering whether any of the three categories of preemption apply, however, the purpose of Congress is the ultimate touchstone of pre-emption analysis." Kroske v. U.S. Bank Corp., 432 F.3d 976, 981 (9th Cir. 2005) (internal citations omitted).

The Tenth Amendment reserves certain powers to the states. U.S. Const. amend X ("The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."). Thus, when analyzing preemption, "where federal law is said to bar state action in fields of traditional state regulation . . . we have worked on the assumption that the historic police powers of the State were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress. The presumption of non-preemption does not apply however when the State regulates in an area where there has been a history of significant federal presence." Kroske, 432 F.3d at 981 (internal citations omitted).

IBEW argues that California's collective bargaining laws are not pre-empted by the Bankruptcy Code, either by the doctrines of field preemption or conflict pre-emption and therefore Section 365(a) cannot be used by the City to reject IBEW's CBA in violation of state law. IBEW contends that the Ninth Circuit interprets the scope of pre-emption very narrowly. See In re Pacific Gas & Electric, 350 F.3d 932 (9th Cir. 2003). IBEW also cites In re Appelbaum, 422 B.R. 684, 689 (9th Cir. B.A.P., 2009). "While federal bankruptcy law is pervasive and there is a strong federal interest in bankruptcy, .... federal bankruptcy law is not so pervasive, nor is the federal interest

so dominant, as to wholly preclude state legislation in the area.").

IBEW further claims that despite the Supremacy Clause, bankruptcy law does not preempt all state laws. Exceptions have been identified in other cases. See BFP v. Resolution Trust Corp., 611 U.S. 531, 539 (1994) (Section 548(a) does not displace state foreclosure law); Midatlantic Nat'l Bank v. New Jersey Dep't of Envt'l Prot., 474 U.S. 494, 505 (1986) (section 544(a) does not pre-empt state environmental law); In re Tippett, 542 F.3d 684, 689 (9th Cir. 2008) (section 326(a) does not preempt California's *bona fide* purchaser statute). Thus, according to IBEW, the Bankruptcy court erred in not finding that state labor law should also be exempt from federal pre-emption. IBEW argues that the language included in the 2002 amendment to California Government Code § 53760, the statute that authorizes municipalities to utilize Chapter 9, ("Except as otherwise provided by statute…") is indicative of California's intent to allow Chapter 9 bankruptcies in some circumstances, but not allow full preemption of all state laws in doing so.

In opposition, the City argues that, as the Bankruptcy Court found, state labor law is preempted by the federal Bankruptcy Code under the Supremacy Clause, Uniformity Clause and the Contracts Clause. The Uniformity Clause authorizes Congress to enact uniform bankruptcy laws. U.S. Const. art. 1, §8, cl. 4.

The City argues that the Bankruptcy Court properly recognized this preemption in allowing the City to reject the IBEW CBA as part of its Chapter 9 bankruptcy. The City argues that there is no case law exempting state labor law from federal bankruptcy preemption, nor is there legislative history that would indicate that such an exemption was intended by Congress or by the California legislature. As noted above, the City points to In re County of Orange, 191 B.R. at 1021 (holding that California, having authorized its municipalities to seek Chapter 9 protection must accept Chapter 9 in its totality, including those provisions that Congress clearly intended to preempt state law.) Thus, the City urges this Court to affirm the Bankruptcy Court.

This Court declines to legislate from the bench and create a new exception to federal preemption. State labor law is not explicitly identified in California Government Code §53760 as an exception to the general grant of authority for municipalities to pursue Chapter 9 bankruptcy. If California had desired to restrict the ability of its municipalities to reject public employee contracts in light of state labor law, it could have done so as a pre-condition to seeking relief under Chapter 9. Its failure to take such action convinces this Court that the City was unequivocally authorized to exercise its right under Section 365 and reject the IBEW CBA without interference from

the state.  In addition, state labor law has never been carved

out as an exemption to the Bankruptcy Code's federal preemption

in case law from this circuit or other circuits. While Congress

did not expressly preempt state labor laws in Section 365(a),

incorporating state labor law is, as the Bankruptcy Court so

found, prohibited by the Supremacy Clause, the Uniformity Clause

and the Contracts Clause.  The Bankruptcy Court's finding on

this issue of law is supported by proper analysis.  Accordingly,

the Court affirms the Bankruptcy Court's holding that the City

is permitted to reject the IBEW CBA as part of its Chapter 9

bankruptcy reorganization without limitation by state labor law.

E. Bildisco Standard

     The second issue raised by IBEW in its appeal is that the

Bankruptcy Court erred in ruling that the standard articulated

in N.L.R.B. v. Bildisco & Bildisco, 465 U.S. 513 (1984)

("Bildisco") applies to the approval of the rejection of the

IBEW CBA. IBEW argues that this case was overruled and is

inapplicable to the present action. In Bildisco, the Supreme

Court held that the language "executory contract" in section

365(a) of the Code included collective bargaining agreements.

The Bildisco Court held that the Bankruptcy Court should permit

rejection of such an agreement under section 365(a) if the

debtor can show that the agreement burdens the estate and that

the equities balance in favor of rejecting the labor contract. Id. at 526. Furthermore, the Court held that before acting on a petition to modify or reject a collective bargaining agreement, the Bankruptcy Court should be persuaded that reasonable efforts to negotiate a voluntary modification have been made and are not likely to produce a prompt and satisfactory solution. Id.

Bildisco involved rejection of a collective bargaining agreement in a Chapter 11 bankruptcy. A portion of the holding was thereafter overturned by Congress when it enacted 11 U.S.C. § 1113. Section 1113(f) provides that, "No provision of this title shall be construed to permit a trustee to unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with the provisions of this section."

Section 1113 of the Bankruptcy Code was incorporated into Chapter 11 bankruptcy law, but not Chapter 9. As discussed above, Section 901(a) expands Chapter 9 to include other carefully selected sections of chapters 3, 5, and 11 of Title 11. 6 Collier, supra. ¶ 901.01. However, not all sections are incorporated into Chapter 9 because some sections would frustrate the unique purpose of municipal debt adjustment proceedings. Id. One of those sections not incorporated in Chapter 9 through Section 901(a) is Section 1113. See 11 U.S.C. § 901(a).

Though Bildisco was a Chapter 11 case, one court has held that Bildisco applies in Chapter 9 cases. In re County of Orange, 179 B.R. at 183. The court in In re County of Orange found that Section 1113 overturned Bildisco's holding that before rejection, a Chapter 11 debtor-in-possession can unilaterally modify a collective bargaining agreement. However, the In Re County of Orange court stated that this finding applied only to Chapter 11, not Chapter 9. Id. at 182-83.

Analyzing the legislative history of Section 1113 and its potential application to Chapter 9 bankruptcies, the Court in In re County of Orange noted that Congress contemplated enacting a "1113-like" statute for Chapter 9, but did not. Id. at 183 n.15. The Court reasoned that Congress may have decided against adding a section 1113 to Chapter 9 out of concern about encroaching on states rights under the Tenth Amendment. Without a section 1113, states are able to decide on their own whether to allow a municipality to file for bankruptcy under Chapter 9 (and have the power to reject union contracts), or not. Chapter 9 was later amended and Section 1113 was again not incorporated, thus strengthening the argument that Congress did not intend for Section 1113 to apply to Chapter 9 or to overrule Bildisco's holding as to a Chapter 9 case. Id.

In deciding whether the City could reject IBEW's CBA, the Bankruptcy Court held that the standard articulated in Bildisco

was still the appropriate standard for labor contract rejection in a Chapter 9 case. Using the Bildisco standard, the Bankruptcy Court determined that rejection of the IBEW CBA was permissible. While the Bankruptcy Court adopted the reasoning of the In Re County of Orange court and applied Bildisco to the current Chapter 9 case, IBEW contends that Bildisco is an irrelevant, overruled case. IBEW argues that Bildisco is not the appropriate standard to determine whether a municipality may reject and unilaterally modify the IBEW contract. IBEW further argues that In re County of Orange is not persuasive because it does not deal with contract rejection, and to the extent that it does contribute to the current analysis, In Re Country of Orange supports following state labor law due to its references to the Meyers-Milias-Brown Act ("MMBA").

IBEW urges the Court to require the City to follow state labor law. Under state labor law, as governed by the MMBA, Cal. Gov't Code § 3500 et seq., municipalities are supposed to first negotiate the terms of a contract with the union, and are to negotiate again if modifying the terms before the contract has expired. In Re County of Orange, 179 B.R. at 183. This negotiation process may be circumvented only in emergency situations, and only after satisfying a four part test found in Sonoma County Org. of Pub. Employees v. County of Sonoma, 591 P.2d 1, 5 (Cal. 1979). Under emergency situations, as in In Re

County of Orange, municipalities would have to first prove that they met the Sonoma emergency test before modifying labor contracts. In Re County of Orange, 179 B.R. at 184. IBEW urges the Court to adopt the Sonoma standard rather than the Bildisco standard.

The City argues that the Bildisco standard applies to whether the City may reject the IBEW contract. The City maintains that the Bankruptcy Court properly applied In Re County of Orange in deciding that the Bildisco standard for rejecting a CBA should apply to a Chapter 9 case.

This Court agrees with the Bankruptcy Court that the standard articulated in Bildisco is the appropriate standard to apply in this case. The Bankruptcy Court properly concluded that a municipality operating under Chapter 9 may utilize 11 U.S.C. Section 365 to reject a CBA, if the municipality can show that the requirements of Bildisco are met. The court in In Re County of Orange concluded that "Bildisco applies in Chapter 9, because Congress has had numerous opportunities to limit its effect by incorporating § 1113 into chapter 9." 179 B.R. at 183. The Bankruptcy Court declined to "do what Congress has not done, whether by incorporating Section 1113-like provisions into Chapter 9, or by requiring compliance with state labor law." (Memorandum Decision, p. 9.) This Court agrees with the Bankruptcy Court that it is Congress, not the Court, which

should decide whether to incorporate a Section 1113-like provision into Chapter 9. In the absence of such legislation, and in the absence of case law that directly addresses the issues of this case, the Court finds <u>Bildisco</u> and <u>In re County of Orange</u> to be persuasive authorities for analyzing and determining the appropriate standard for a municipality to reject a CBA during Chapter 9 bankruptcy. Accordingly, the Court affirms the Bankruptcy Court's use of the <u>Bildisco</u> standard.

F. <u>Satisfaction of the Bildisco Standard</u>

IBEW's third argument in support of its appeal herein is that even if the <u>Bildisco</u> standard applies in Chapter 9 proceedings, the standard was not applied correctly by the Bankruptcy Court when it found that the City could reject the CBA pursuant to <u>Bildisco</u>. IBEW contends that the City did not produce sufficient evidence that: (1) the IBEW CBA constituted a burden, (2) the balance of equities was in the City's favor, and (3) the City negotiated reasonably with IBEW prior to rejecting the CBA. This Court finds that the Bankruptcy Court's evidentiary rulings and findings on the three prongs of the <u>Bildisco</u> test were not clearly erroneous and, therefore, are affirmed.

1. <u>Bankruptcy Court's reliance on reply declarations</u>

IBEW claims that the Bankruptcy Court improperly relied on inadmissible reply declarations filed by the City in reaching its decision because the declarations did not reply to evidence submitted by IBEW and the declarations improperly introduced new evidence to bolster the City's burden argument. (IBEW Opening Brief, n. 11). The City's response is that the Bankruptcy Court only relied on the reply declarations to the extent that the evidence was already admitted at trial by IBEW so the reply declarations were not improper.

Here, the City filed a reply brief with five reply declarations. IBEW filed a Motion to Strike the reply brief and declarations as not responsive to evidence submitted in the opposition. On February 2, 2009, the Bankruptcy Court had a hearing on the motion to strike, and denied the motion.

The Court finds that the Bankruptcy Court did not abuse its discretion by relying, in part, on evidence raised in the reply declarations to conclude that the IBEW contract is burdensome. Any evidence relied on in those declarations was already admitted at trial by IBEW. (SER 711:12-17:22, 872:8-16, 895:21-909:19). IBEW claims that it did not present any evidence at the evidentiary hearing, so any reply by the City was improper. However, IBEW did admit trial exhibits. The Bankruptcy Court only relied on the reply declarations to the extent that the

evidence in the reply declarations related to the already-admitted exhibits.

Further, the Bankruptcy Court made it clear that any "additional evidence produced in connection with the motion served primarily to corroborate the foregoing [eligibility findings]." (Findings of Fact and Conclusions of Law, p. 5.)

Thus, the Bankruptcy Court's refusal to strike the reply declarations did not prejudice IBEW because the Bankruptcy Court stated that the relevant findings of fact from the Eligibility Findings alone were sufficient to justify granting the motion. (Id. at p. 4.)

## 2. Eligibility Findings

IBEW argues that the Bankruptcy Court clearly erred by incorporating findings of fact from the eligibility hearing ("Eligibility Findings") into its decision that the City satisfied the standards under Bildisco because determining eligibility and determining rejection of a CBA apply different burdens of proof. On the other hand, the City argues that use of the Eligibility Findings was not clearly erroneous because the findings came from the same case as the Motion, were relevant to the issues being litigated in the Motion and were fully litigated in front of the same judge. The City further points out that these Eligibility Findings were made after an 8 day

eligibility hearing and were unanimously affirmed by the BAP. Moreover, the City claims that IBEW has failed even to address the Eligibility Findings in this appeal and this silence underscores the conclusive effect of the Eligibility Findings. In short, according to the City, having litigated certain facts, lost, appealed and lost again, IBEW cannot re-litigate or dispute in this appeal those Eligibility Findings. This Court agrees with the City's argument on this issue.

Other than stating that the two evidentiary hearings required different burdens of proof, IBEW has offered no case law to support its argument that the Bankruptcy Court's use of the Eligibility Findings was clearly erroneous. The Bankruptcy Court noted in its findings of fact exactly which Eligibility Findings it found most relevant to the Bildisco standard. (See Findings of Fact and Conclusions of Law, p. 4.) This Court finds that the Bankruptcy Court's reliance on the Eligibility Findings as part of its Findings of Fact and Conclusions of Law was not clearly erroneous.

3. Determination that IBEW CBA was burdensome

The first prong of the Bildisco test applied by the Bankruptcy Court is whether the collective bargaining agreement burdens the estate. Bildisco, 465 U.S. at 526. In a Chapter 9 case, there is no "estate." As explained in Bildisco, a debtor

must demonstrate that the collective bargaining agreement burdens the debtor's ability to reorganize. Id. at 525-26. The Bankruptcy Court found that the City had introduced sufficient evidence to satisfy its burden of proof on this issue. The IBEW challenges this finding in this appeal by arguing, inter alia, that the evidence produced by the City only related to the burden on the City's general fund whereas the proper inquiry should have been on the burden to the City on the whole.[2] The City contends that the burden evidence and analysis properly focused on the general fund, as the general fund affects the City's ability to reorganize pursuant to Chapter 9.

This Court finds that the Bankruptcy Court did not err in focusing its burden inquiry on the insolvent general fund, rather than the City's finances as a whole, because it was previously determined at the eligibility hearing and affirmed by the BAP that the City could not simply dip into other funds to

---

[2] IBEW has also raised the issue that the Bankruptcy Court's Findings of Fact adopted, virtually unchanged, all the proposed findings of fact drafted by the City. IBEW contends that because of this, this Court must review the Bankruptcy Court's findings with special scrutiny. The City argues that this heightened standard of review is not warranted where, as here, the Bankruptcy Court did not simply adopt all the findings uncritically. This Court finds that while the Bankruptcy Court adopted most of the City's proposed findings of fact, the Bankruptcy Court also added additional findings and analysis. Even were this Court to review the Findings of Fact with special scrutiny, this Court does not find that the Bankruptcy Court's adoption of the City's proposed findings constitutes clear error.

cover general fund expenses. <u>See</u> <u>In Re City of Vallejo</u>, 408 B.R. 280, 293 (B.A.P. 9th Cir. 2009.) The BAP discussed the general fund at length in affirming the Bankruptcy Court's findings that the City was insolvent, and the City's ability to reorganize hinged on the general fund emerging from insolvency. 408 B.R. at 286-294.

With respect to the Bankruptcy Court's findings of fact on the burden issue, IBEW specifically identifies the Bankruptcy Court's finding #40 -- which states that the IBEW CBA longevity pay provision is substantial – as being clearly erroneous. The IBEW CBA does not, in fact, provide for longevity pay. While this finding was in error, the Court does not find that this error in and of itself warrants reversal of the Bankruptcy Court's decision. Even absent this finding, there was more than enough evidence relied upon by the Bankruptcy Court to justify its conclusion that the IBEW CBA constitutes a burden.

With the exception of the erroneous finding mentioned above, the majority of IBEW's evidentiary disagreements are not with the individual findings of fact, but rather with the conclusion drawn by the Bankruptcy Court, namely that the IBEW CBA is burdensome. However, the standard for this Court to overturn the Bankruptcy Court's evidentiary findings is high. This Court would have to find both clear error and prejudice in reviewing the Bankruptcy Court's findings of fact. While there

may be conflicting evidence, or even evidence that this Court might have weighed differently, this is not enough to overturn the Bankruptcy Court's ruling. <u>See</u> <u>e.g.</u> <u>Nat'l Wildlife Fed'n.</u>, 422 F.3d 782, 795 (9th Cir. 2005) (Clear error is not demonstrated by pointing to conflicting evidence in the record. If the trial court's account of the evidence is plausible in light of the record viewed in its entirety, the reviewing court may not reverse it.) In light of all the evidence reviewed by the Bankruptcy Court for the eligibility hearing and the evidentiary hearing, the Bankruptcy Court's findings of fact, and ultimate conclusion that the facts show the City met the <u>Bildisco</u> standard on the burdensome issue, were not clearly erroneous.

4. <u>Determination that the balance of equities favors the City</u>

The Bankruptcy Court found that absent rejection of the IBEW CBA, the City would not likely be able to implement a viable plan of adjustment and emerge from bankruptcy. <u>Bildisco</u> requires a determination that the equities balance in favor of rejecting the contract. 465 U.S. at 526. However, the debtor need not demonstrate that rejection is necessary for a successful reorganization. <u>See</u> <u>id</u>. at 527. In balancing equities, "the Bankruptcy Court's inquiry is of necessity

speculative and it must have great latitude to consider any type of evidence relevant to the issue." Id. IBEW argues that the Bankruptcy Court's conclusion that the balance of equities favored CBA rejection is erroneous. IBEW challenges both the Bankruptcy Court's balancing of the equities, and the Bankruptcy Court's consideration of a declaration from IBEW's expert. IBEW withdrew its expert, but the Bankruptcy Court admitted his declaration into evidence to the extent that it constituted an admission. While IBEW argues that nothing in the declaration was an admission, they do so in a footnote and without analysis or support. This Court finds that IBEW has not demonstrated that the Bankruptcy Court abused its discretion in considering the evidence in IBEW's expert's declaration.

Nor does this Court find that the Bankruptcy Court's conclusion that the balance of equities favored the City is clearly erroneous. The Bankruptcy Court's findings that plunging revenues threatened the City's financial survival; that there was little, if anything left for the City to cut apart from its labor expenses; that further reductions in the funding of services threatened the City's ability to provide for the basic health and safety of its residents; that reducing the number of IBEW employees would threaten the health and safety of Vallejo residents; that the IBEW CBA required a salary increase in the next two years while City deficits were unresolved; and

that the City incurred significant expenses from items like
uncapped sick leave accrual and unfunded retiree health
liability costs (see City Opposition brief at p. 27-28 and
citations to the record therein) are supported by the record in
this case. While this Court recognizes that contract rejection
may have a significant adverse effect on IBEW employees, IBEW is
not being singled out and all constituencies have or will suffer
severe cuts in Vallejo, particularly the City's residents
because of the City's decision to petition for relief under
Chapter 9. Accordingly, because the Bankruptcy Court's findings
are entitled to great latitude and IBEW has not demonstrated
that these findings were clearly erroneous, this Court affirms
the Bankruptcy Court's conclusion on this second prong of the
Bildisco standard.


5. Determination that the City negotiated reasonably with
    IBEW, and a resolution is not likely

The Bankruptcy Court found that the City met its burden of
proof by demonstrating that reasonable efforts to negotiate a
voluntary modification were made and and were not likely to
produce a prompt and satisfactory solution. The Bankruptcy Court
ordered the parties to judicially supervised settlement talks,
which were unsuccessful, prior to issuing its finding. The
record in this case reflects almost two years of negotiations

between the City and its unions, including IBEW. Both parties have made reasonable efforts to modify the CBA but it appears unlikely to this Court (just as it did to the Bankruptcy Court) that a "prompt and satisfactory solution is possible". In sum, this Court does not find that the Bankruptcy Court erred in finding that reasonable negotiations were undertaken and a prompt and satisfactory resolution was unlikely.


ORDER

For all the foregoing reasons, IBEW's appeal of the Bankruptcy Court's Order granting the City's Motion for Approval of Rejection of IBEW's Collective Bargaining Agreement is DENIED and the Bankruptcy Court's March 13, 2009 Memorandum decision and August 31, 2009 Findings of Fact and Conclusions of Law are AFFIRMED.


IT IS SO ORDERED.


Dated: June 14, 2010

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE